Day, C. J.
The question in the case is, whether a judgment of the Superior Court of Cincinnati is a lien on the land of the judgment debtor in the county of Hamilton, not lying within the city of Cincinnati.
Judgment liens are of legislative creation, and, where not otherwise limited, they extend to all the lands of the judgment debtor within the territorial jurisdiction- of the court rendering the judgment. But the power which creates the lien has equal authority to define its limits. *384 Tbe extent of the lien in question, then, becomes purely a, question of statutory construction.
The Superior Court of Cincinnati was “established within the city of Cincinnati, in the county of Hamilton,” as a “count of record” by an act passed April 7, 1854.. S. & C. 388.
The act confers upon the court jurisdiction in actions relating to real estate situated within the city of Cincinnati,, and, with few exceptions, in all other actions where the defendants, or some one of them, reside, or may be summoned within the city of Cincinnati.
The provisions of the act directly bearing upon the question in controversy are contained in section 20, and are as-follows:
“All laws . . conferring jurisdiction, in the actions, above enumerated, upon the Courts of Common Pleas or District Courts, . . regulating their practice and forms, of process, prescribing the force and effect of their judgments, orders, or decrees, and authorizing or directing the-execution thereof, shall be held and deemed to extend to-the said Superior Court of Cincinnati, as fully as they extend to the said Courts of Common Pleas and District. Courts, unless the same be inconsistent with this act, or plainly inapplicable; and the said Superior Court of Cincinnati, in respect to the . . force and effects of its-judgments, orders, or decrees, shall be deemed and held a-court of general jurisdiction.”
A judgment of the Court of Common Pleas becomes alien on the debtor’s land, by virtue of section 421 of the-code. That section was in force when the Superior Court, of Cincinnati was established, and still l’emaius in force,, and is as follows :
“The lands and tenements of the debtor within the-county where the judgment is entered shall be bound for the satisfaction thereof, from the first day of the term at-which judgment is rendered ; but judgments by confession and judgments rendered at the same term at which the action is commenced, shall bind such lands only from the. *385 day on which such judgments are rendered. All other lands, as well as goods and chattels of the debtor, shall be-hound from the time they shall be seized in execution.”
The provisions of this section “ extend” to the Superior-Court of Cincinnati, by virtue of the 20th section of the act establishing the court, unless they are “inconsistent”' with that act, or are “plainly inapplicable.”
The jurisdiction of the Court of Common Pleas, and that-of the Superior Court of Cincinnati, embraces substantially the same classes of actions. There is, therefore, no obvious, reason why the 421st section of the code should not be-equally applicable to both courts.
Nor are the provisions of that section “inconsistent”' with the act establishing the Superior Court of Cincinnati. They do not conflict with any. of its provisions; on the-contrary, they are in strict harmony therewith. Nor would this be doubted if the city of Cincinnati was co-extensive-with the county of Hamilton; for it is not disputed, but-that the section is in force within the limits of the city.
The question, then, does not so much relate to the applicability of the section, or to its inconsistency with the-act creating the court, as it does to the extent of the lien thereby created. But the extent of a judgment lien, as-well as the lien itself, is a matter of legislative control.
The extension of the lien of a judgment beyond the territorial jurisdiction of the court which renders it is no more inconsistent with such jurisdiction than is the power to issue executions to be levied on land outside of its territorial jurisdiction. In either case, it might be said the incidental effect of a judgment is to bind property where the court has no power to render a judgment against it directly. But both cases may exist as the creation of positive law, and not necessarily be inconsistent with the territorial jurisdiction of the court rendering the judgment.
The act creating the Superior Court of Cincinnati contains nothing more inconsistent with the existence of a lien of its judgments upon the debtor’s land in the county *386 of Hamilton, outside of the city of Cincinnati, than it does with the seizure of such lands by execution issued on its judgments. Yet it is not disputed, but that such lands may be so subjected to the satisfaction of its judgments, ■under the provisions of the code adopted by the 20th section of the act creating the court.
Had the 421st section of the code been re-enacted as one of the sections of that act, there would have been no incongruity in its provisions. There could then be no doubt but that the lien extended to all the debtor’s land “ within the county.”
But the provisions of that section being applicable and not inconsistent with the act establishing the Superior 'Court, under the 20th section of that act, are to be applied to thé judgments of that court “ as fully” as they extend to those of the Common'Pleas. The lien, then, of the judgments of the Superior Court extend throughout the county, unless there be' found some express or implied limitation to the contrary. The statute contains no such express limitation. But it is claimed that, by necessary implication, the lien is limited to the'territorial jurisdiction of the court, and can not therefore transcend the limits of the •city. But there is no occasion for such implication, except in cases where the statute creates a lien without defining its ■extent. Where the extent of the lien is prescribed, there is ■no room for implication; the statutory limits must control.
The statute, by virtue of which the judgments of the Superior Court become liens, prescribes the extent of the lien in express terms. The territorial limits of the lien is .as clearly stated as is the lien itself. The necessity, therefore, for any implication as to its extent does not exist.
The limit of what is ordinarily called the territorial jurisdiction of a court, is usually determined by the extent of territory in which it has the power to render judgments or decrees directly affecting lands, and within which its process directed to its own officers may be served. By an amendment of the act creating the Superior Court, passed February 10, 1857 (S. & C. 391), jurisdiction was conferred *387 upon the court, enabling its judgment creditors to bring therein actions in the nature of .creditor’s bills in aid of execution, “to subject any interest of the judgment debtor in lands situate in Hamilton county to the payment of such judgments.” To this extent the territorial jurisdiction of the court is not limited to the city, but extends to the eounty. The jurisdiction of the court is not, then, in all cases, bounded by the same lines, but, for special purposes, are varied by-the statute. In the same way, the liens of its judgments may be made to correspond with either limit of its jurisdiction, or made to vary from both.
The Court of Common Pleas and Superior Court have jurisdiction in the same classes of cases; their records are kept by the same clerk, and in the same office; and their respective liens are derived from the same statute. Nor is there any reason why their liens should not be of equal extent, in accordance with the language of the statute.
It is manifestly the policy of the laws creating such liens, that they should be co-extensive with the county in which the suit originated, or the judgment is rendered, whatever may be the extent of the territorial jurisdiction of the court rendering the judgment.
An act, passed at the same session of the General Assembly that enacted sec. 421 of the code, provided that judgments of the Supreme Court — which has jurisdiction throughout the State — should be a lien on the debtor’s lands which lie “ within the county where the suit originated” (S. & C. 385); and, the year previous, a similar legislative provision was made in relation to the liens of judgments of the District Court. S. & C. 381, 383.
The code provides that a transcript of a j udgment of a justice of the peace, or mayor of any city or incorporated village, not being appealed or stayed, may, after ten days from the rendition of the judgment, be filed in the office of the clerk of the Court of Common Pleas of the county in which the judgment was rendered, by the party in whose favor the judgment was rendered; and thereupon the clerk is required to enter the case upon the execution docket, *388 with the amount of the judgment which, it is provided,, shall then become a lien on the debtor’s land. S. & C. 1093 S. & S. 567. , The extent of this lien is not expressly prescribed, but, from the context, it was obviously intended that it should be of the same extent as that provided in sec. 421. It was never supposed that the lien was limited to the township or city comprising the territorial jurisdiction of the magistrate rendering the judgment.
This legislation evinces a policy, on the one hand, to limit one class of judgment liens to the county in which the suit originated, and, on the other hand, to extend the lien, in all other cases, to all the debtor’s land in the county where the-judgment was rendered, without reference to the territorial-jurisdiction of the court rendering the judgment.
In the light of this policy, we are constrained to hold,, that, under sec. 421 of the code, as adopted by sec. 20 of the act establishing the Superior Court of Cincinnati, the-liens of the judgments of that court extend to all the debt- or’s land within the county of Hamilton, whether within or outside of the city of Cincinnati. Otherwise, there exists the legislative anomaly, that the judgments of the inferior courts in that county may become liens throughout the entire county; while the judgments of the Superior Court, which are of equal importance with those of the Common Pleas, are limited in their extent to the city.. The territorial jurisdiction of the courts rendering such judgments, no more limits the lien in one case than in the-others; but, in all, their liens are created, and their extent, controlled, by the provisions of positive law.

Judgment reversed and cause remanded.

McIlvaine, White, and Rex, JJ., concurring. Welch,, J., not sitting.